USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/31/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

            - against -

MARK GONZALEZ,

            Defendant.

**21 Cr. 288 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Defendant Mark Gonzalez ("Gonzalez") filed *pro se* a motion to withdraw the guilty plea he entered in this action on August 31, 2022. (See Dkt. No. 132 (the "Motion" or "Mot.").) In support of his Motion, Gonzalez contends that his "decision to plead guilty was involuntary," that he is "legally and factually innocent" of the charges in the superseding information (the "Information"), and that there was "prejudicial variance" between the facts alleged in the Information and the evidence offered by the government. The Government opposes the Motion. (See Dkt. No. 136 ("Opp.").) For the reasons stated below, Gonzalez's Motion is **DENIED**.

                  I.    **BACKGROUND**

On May 20, 2021, Gonzalez was arrested and charged with narcotics conspiracy. The Government alleged that Gonzalez was a leader in a drug trafficking organization that distributed large quantities of fentanyl in the Bronx.

Gonzalez's arrest followed that of his co-defendant, Michael Kelleher ("Kelleher"), on March 5, 2021. Kelleher was charged with selling fentanyl as part of a larger conspiracy to distribute narcotics. After Kelleher's arrest, the Government conducted surveillance – including undercover drug purchases and footage from nearby pole cameras -- at several locations controlled by Gonzalez. Through this surveillance, Gonzalez was observed engaging in drug transactions with several other dealers on a regular basis.

On May 20, 2021, the Government arrested Gonzalez and executed search warrants at his residences and vehicles. According to the Government, upon executing those warrants, it recovered "several stacks of [money], tied together in a manner consistent with narcotics proceeds, large quantities of empty glassine envelopes, as well as quantities of cocaine, and prescription pills, along with bundled glassines of fentanyl with the names of at least three different dealers -- co-conspirators -- who worked for Gonzalez." (Opp. at 2.) The Government asserts that it also recovered from Gonzalez "quantities of narcotics that looked identical in appearance to the packages of narcotics sold to [undercover officers]," some of which was "even located in the same cardboard boxes that Kelleher had provided to the undercover" officer. (Id. at 3.)

After five changes of counsel, Gonzalez pleaded guilty before Magistrate Judge Jennifer E. Willis on August 31, 2022, to one count of narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (See Dkt. No. 83-1.) During Gonzalez's plea allocution, Judge Willis questioned him under oath and confirmed:

- that Gonzalez understood the nature of the proceedings and was "fully competent to enter an informed plea" (id. at 22);
- that Gonzalez had a "full opportunity to discuss the case and the potential consequences of a plea" with his attorney (id. at 8);
- that Gonzalez was satisfied with his attorney's representation (id.);
- that Gonzalez understood the charges against him and had had enough time to discuss them with his attorney (id. at 8-9);
- that Gonzalez understood that he was giving up certain rights by pleading guilty, including the right to a trial by jury (id. at 14-15);
- that Gonzalez understood the maximum and mandatory minimum penalties associated with his offense,

3

including the potential for safety valve relief (id. at 9-12);

- that Gonzalez understood that he was pleading guilty without the benefit of a plea agreement (id. at 11-12);

- that no one had threatened or coerced Gonzalez to plead guilty (id. at 18);

- that Gonzalez entered his plea "voluntarily" and of his "own free will" (id.);

- that no "promises [had] been made" to Gonzalez to induce him to plead guilty and that he agreed he "would still be bound by the sentence" he received even if he was "surprised or disappointed" by it (id. at 15-16, 18);

- that Gonzalez did "in fact commit the offense of narcotics conspiracy as charged in Count One of the Information" (id.);

- that "between May 2020 and March 2021," Gonzalez "and other individuals" known to him "agreed to distribute narcotics" (id. at 19);

- that Gonzalez had reviewed the laboratory reports prepared by law enforcement and agreed that they

> showed he was involved in distributing more than "400 grams" of fentanyl (<u>id.</u> at 20); and

- that Gonzalez was "aware" at the time that he was "entering into an agreement" with others "to violate the narcotics laws of the United States" (<u>id.</u>).

On September 7, 2022, the Court accepted Gonzalez's guilty plea. Nearly three months later, during a status conference held on December 2, 2022, the Court denied Gonzalez's first request to withdraw his guilty plea. (<u>See</u> Dkt. No. 88, at 10.) On February 17, 2023, the Court appointed new counsel for Gonzalez, Richard Palma ("Palma"), under the Criminal Justice Act, in order to determine whether there was a reasonable basis for Gonzalez to withdraw his guilty plea.

Shortly thereafter, Palma requested a subpoena directed at the Essex County Correctional Facility ("ECCF") in order to investigate recordings of certain jail calls between Gonzalez and Troy Archie ("Archie"), who had served as defense counsel at the time surrounding Gonzalez's plea allocution. In support of this request for a subpoena, Palma claimed that during those calls Gonzalez informed Archie that he "wanted to withdraw his guilty plea," but that Archie had refused to honor Gonzalez's request and "advised him that if he intended to withdraw his plea, he must proceed to do so *pro se*." (Dkt.

5

No. 100-1, ¶ 5.) The Court authorized the subpoena. Over the next several months, Palma continued to investigate communications between Archie and Gonzalez, as well as between Archie and Gonzalez's girlfriend.

After months of investigation, including an extension of time to respond, as well as an additional subpoena to ECCF, Palma wrote the Court "in considerable frustration to most respectfully seek the Court's permission to withdraw as counsel." (Dkt. No. 129.) After holding a hearing on July 7, 2023 to consider this request and hearing from both Palma and Gonzalez *ex parte*, the Court granted Palma's request to withdraw as counsel and ordered Gonzalez to proceed *pro se*. Gonzalez filed this *pro se* Motion on July 26, 2023. (See Dkt. No 132.)

## II. **DISCUSSION**

A.  LEGAL STANDARD

A criminal defendant does not have an "'absolute right to withdraw his plea of guilty' before his sentencing." United States v. Lesane, No. 18 Cr. 527, 2020 WL 705087, at *1 (S.D.N.Y. Feb. 12, 2020) (quoting United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994)). To the contrary, "[t]he standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas," and allowing the unexacting withdrawal of such pleas

6

"not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." United States v. Rose, 891 F.3d 82, 85 (2d Cir. 2018) (quoting United States v. Schmidt, 373 F.3d 100, 103 (2d Cir. 2004)). That "a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992).

A guilty plea may be withdrawn only if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[A] defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." Gonzalez, 970 F.2d at 1100 (quotation marks omitted). In determining whether a defendant has shown a "fair and just reason to justify withdrawal," courts consider "(1) whether the defendant has asserted his legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . .; and (3) whether the government would be prejudiced by a withdrawal of the

7

plea." Schmidt, 373 F.3d at 102-03. Although "[t]he Government is not required to show prejudice" when the defendant has not demonstrated "sufficient grounds for permitting withdrawal," a court may consider "the presence or absence of such prejudice" when exercising its discretion. Gonzalez, 970 F.2d at 1100.

B.   ANALYSIS

Gonzalez has not satisfied his burden of demonstrating a "fair and just reason" to withdraw his guilty plea. First, that Gonzalez waited approximately three months after pleading guilty to first request to withdraw his plea weighs against granting the Motion. See United States v. Taylor, 242 F.3d 369, 2000 WL 1786338, at *4 (2d Cir. 2000) (holding that a five-week delay between defendant's plea and withdrawal motion weighed against granting withdrawal).

Second, the Court does not find support for Gonzalez's contention that his guilty plea was involuntary. Gonzalez claims that his then-counsel, Archie, "induced" him to plead guilty. (See Mot. at 6.) But this conclusory assertion is insufficient to cast doubt on the voluntariness of Gonzalez's guilty plea. See United States v. Padilla, No. 13 Cr. 360, 2014 WL 1621487, at *4 (S.D.N.Y. Apr. 22, 2014) (holding that "[defendant's] allegation . . . is too general and conclusory" to raise an issue of fact requiring a hearing).

8

A defendant who alleges his guilty plea was involuntary "must present or submit a sworn affidavit from one with personal knowledge of the underlying facts to create a factual dispute requiring a hearing." Id. (quotation marks and alteration omitted). Because Gonzalez did not submit a sworn affidavit in support of his motion that would explain the facts and circumstances of Gonzalez's allegation that Archie induced him to plead guilty, the Court cannot find a sufficient factual basis to support Gonzalez's Motion. See id. (holding that defendant's "assertion, contained not in his affidavit, but his memorandum of law, . . . cannot provide the Court with a basis for making a finding of fact").

Even if the Court were to consider the assertions made in Gonzalez's *pro se* papers, however, those allegations are unsupported by the record and directly contradict his plea allocution, which Gonzalez provided to Magistrate Judge Willis under oath. See Ingram v. United States, No. 17 Civ. 7110, 2020 WL 6323822, at *4 (S.D.N.Y. Oct. 28, 2020) ("No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory."). The Court therefore concludes Gonzalez has failed to demonstrate that his guilty plea was involuntary.

Third, the Court is not convinced by Gonzalez's arguments that he is actually innocent of the charges to which he pleaded guilty. Gonzalez claims that the evidence shows he "merely distributed fentanyl to Kelleher on approximately 10 separate occasions" in quantities "not exceeding 95 grams." (Mot. at 8.) Gonzalez insists this is insufficient to show he engaged in a conspiracy because a conspiracy "must involve the agreement of two or more persons to commit a criminal act." (Mot. at 9-10.)

But the Court finds that Gonzalez's factual assertions are contradicted by the record evidence. Far from merely 95 grams of fentanyl, the Government offered evidence tying Gonzalez to more than 400 grams of fentanyl, including video footage from pole cameras near the undercover drug buys and laboratory testing of the narcotics recovered during those buys. (See Dkt. No. 24, at 6-7; Dkt. No. 88, at 8-10; see also Opp. Ex. A.) Consistent with the Government's evidence, Gonzalez admitted under oath during his plea allocution that he had agreed with "other individuals" to participate in a drug conspiracy that involved "in excess of 400 grams" of fentanyl. (Dkt. No. 88, at 9, 19-20.) See Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013) ("[S]olemn declarations in open court carry a strong presumption of verity."). Gonzalez's "bald statements that simply contradict

10

what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001).

The Court finds Gonzalez's next argument equally unconvincing. Invoking the buyer-seller exception to drug conspiracy, Gonzalez claims that the Government does not establish that there was an agreement between him and Kelleher to engage in a conspiracy but that it establishes only that there was an agreement between the two to buy and sell drugs. (Mot. at 8.) As an initial matter, Gonzalez's suggestion that the Government's evidence is limited to drug transactions between just himself and Kelleher is mistaken. Instead, the record shows that the charged conspiracy implicates at least two co-conspirators in addition to Kelleher, as well as other unidentified dealers, all of whom the Government alleged sold drugs on behalf of Gonzalez in furtherance of the conspiracy. See United States v. Dove, 884 F.3d 138, 147 (2d Cir. 2018) ("[T]he Government [does] not have to prove the identities [of co-conspirators] in order to secure a [conspiracy] conviction."); see also United States v. Valencia, 226 F. Supp. 2d 503, 512 (S.D.N.Y. 2002) ("[T]he Government was not required to prove the identities of the co-conspirators."), aff'd, 100 F. App'x 17 (2d Cir. 2004). It thus mischaracterizes the record to suggest that the Government's

11

evidence shows merely a buyer-seller relationship between only Gonzalez and Kelleher.

In any event, the Court finds the "narrow" buyer-seller exception does not apply here. Dove, 884 F.3d at 151. "The exception does not apply if the evidence supports a finding that the buyer and seller shared a conspiratorial purpose to advance other transfers." Id. (quotation marks and alteration omitted). Here, the Government's evidence supports a finding that Gonzalez and Kelleher shared a conspiratorial purpose. The record demonstrates that Gonzalez conspired with Kelleher and at least two other co-conspirators, as well as several unidentified co-conspirators, to distribute approximately 400 grams of fentanyl over at least a nine-month period. (See Dkt. No. 24, at 2-9; see also Opp. at 2.) Gonzalez was observed being driven by his co-conspirators to the immediate vicinity where the undercover drug purchases were made, video footage shows Gonzalez providing drugs to Kelleher for use in an undercover buy and then retrieving the money from those sales from Kelleher, Gonzalez remained near the sites of those undercover buys, and cell tower records indicate frequent phone calls between Gonzalez and Kelleher as those undercover buys were occurring. (See Dkt. No. 24, at 2-7; see also Opp. at 2-3, 9.) See Dove, 884 F.3d at 151 (holding buyer-seller exception did not apply where evidence showed co-conspirators

12

"enjoyed mutual trust and extensive cooperation . . . [and] had a history of standardized dealings in wholesale quantities of heroin"). Gonzalez's reliance on the buyer-seller exception is therefore misplaced, and he has failed to demonstrate that he is actually innocent of the charge to which he pleaded guilty.

Fourth, the Court rejects Gonzalez's argument that the evidence in the record prejudicially varied from the Information. "A variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment." Dove, 884 F.3d at 149. Even assuming that prejudicial variance applies in the context of a guilty plea, this argument is without merit. Gonzalez again argues that the Government's evidence supports only a buyer-seller relationship between only Gonzalez and Kelleher. But, as already discussed, the Government offers sufficient evidence to support a conspiracy charge. Thus, the Court concludes that there was no prejudicial variance between the Government's proffered evidence and the charges in the Information.

Lastly, although the Government does not claim it would be prejudiced by withdrawal of Gonzalez's guilty plea, a showing of prejudice is not needed here, where Gonzalez has

13

failed to justify that withdrawal is merited. See United States v. Rosen, 409 F.3d 535, 546 (2d Cir. 2005) ("The Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal."); see also Rose, 891 F.3d at 85 (emphasizing "stringent" standard for withdrawing guilty pleas because doing so "delays and impairs the orderly administration of justice").

Because Gonzalez has failed to justify his Motion to withdraw his guilty plea, the Motion is **DENIED**.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Mark Gonzalez (Dkt. No. 132) to withdraw his plea is **DENIED**.

The Clerk of Court is respectfully directed to terminate the motion.

**SO ORDERED.**

Dated:    31 October 2023
          New York, New York

_____
Victor Marrero
U.S.D.J.