```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/2/25
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

- against -

MARK GONZALEZ,

                Defendant.

21 CR 288 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

    Before the Court is Defendant Mark Gonzalez's ("Gonzalez") *pro se* motion for reconsideration. (See "Third Motion," or "Third Mot.," Dkt. No. 207.) On October 31, 2023, the Court denied Gonzalez's first *pro se* motion to withdraw his guilty plea. (See "First Decision and Order," or "First D&O," Dkt. No. 140; see also "First Motion" or "First Mot.," Dkt. No. 132.) On March 11, 2024, the Court denied Gonzalez's initial *pro se* motion for reconsideration of its First Decision and Order.[1] (See "Second Decision and Order," or "Second D&O," Dkt. No. 164; see also "Second Motion," or "Second Mot.," Dkt. No. 162.) Now, Gonzalez moves *pro se* for reconsideration of the Court's Second Decision and Order. (See Third Mot.) Because Gonzalez's Third Motion is untimely

---

[1] Gonzalez renewed his request to withdraw his guilty plea by letter filed on March 4, 2024, which the Court construed as a motion for reconsideration. (See Second Mot.; Second D&O, at 1.)

and does not present any basis for the Court to reconsider its previous decisions, Gonzalez's Third Motion is **DENIED**.

### I.   GONZALEZ'S THIRD MOTION IS UNTIMELY

As an initial matter, Gonzalez's Third Motion is untimely. "Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions 'have traditionally been allowed within the Second Circuit.'" United States v. Rosner, 19 Cr. 0497, 2022 WL 1004569, at *1 (S.D.N.Y. Mar. 30, 2022) (quoting United States v. Yannotti, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006)). Accordingly, "courts have applied the applicable civil standard to such motions in criminal cases." Id. (internal quotation marks and citation omitted). Hence, the deadlines set by Local Civil Rule 6.3 apply.

Local Civil Rule 6.3 provides that "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." "There generally must be good cause" to excuse an untimely filing. United States v. Okparaeke, 17 Cr. 0225, 2019 WL 4233427, at *2 (S.D.N.Y. Sept. 6, 2019); see, e.g., Davidson v. Scully, 172 F. Supp. 2d 458, 462-63 (S.D.N.Y. 2001) (excusing untimely filing because plaintiff was *pro se* and had filed a notice of motion with the clerk in a timely fashion). Critically, *pro se* status will not, on its own, excuse a delay. See Fabricio

2

v. Artus, 06 Civ. 2049, 2013 WL 2126120, at *1 (S.D.N.Y. Apr. 18, 2018) (rejecting argument that untimely motion for reconsideration should be excused because movant was *pro se*).

The Court denied Gonzalez's Second Motion as untimely because it was signed on February 20, 2024 – nearly four months after the Court's October 31, 2024, First Decision and Order – and Gonzalez "offer[ed] no explanation to the Court about why such a delay should be excused." (Second D&O, at 3; see also Second Mot., at 1; First D&O.) Now, in his Third Motion, Gonzalez argues that the Court should not have denied his Second Motion as untimely because he was never informed by his appointed or standby counsel that there was a fourteen-day deadline to file, the lockdowns at MDC Brooklyn made accessing the law library difficult, and the MDC Brooklyn commissary did not have postage stamps available, which were necessary to mail the Second Motion. (See Third Mot., at 1.) Gonzalez, however, does not offer any explanation as to why his Third Motion was signed on August 13, 2024 – approximately five months after the Court's March 11, 2024, Second Decision and Order. (See Third Mot., at 19; Second D&O.) See, e.g., Okparaeke, 2019 WL 4233427, at *3 (denying *pro se* motion for reconsideration filed nearly six months late where defendant offered no reason why the delay should have been disregarded). The Court therefore denies the Third Motion as untimely.

3

## II. GONZALEZ'S THIRD MOTION OFFERS NO BASIS FOR THIS COURT TO RECONSIDER ITS PRIOR RULINGS

Even if the Third Motion were timely, Gonzalez fails to offer a sufficient basis for this Court to reconsider its prior rulings. "A motion for reconsideration is not intended as 'a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple.'" United States v. Bryant, 06 Cr. 00017, 2021 WL 22608, at *1 (S.D.N.Y. Jan. 4, 2021) (quoting Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)). "Indeed, reconsideration is an 'extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources.'" Id. (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "To warrant reconsideration, the moving party bears the heavy burden of showing 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Id. (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

In short, the Third Motion offers one new ground for reconsideration that is plainly refuted by the evidence, and

otherwise rehashes arguments that the Court rejected in its First and Second Decisions and Orders.

The sole new argument Gonzalez raises is that he was charged with an incorrect weight of fentanyl. (See Third Mot., at 17.) Gonzalez pleaded to participating in a narcotics conspiracy in violation of 21 U.S.C. § 841(b)(1)(A), in that he agreed to violate the narcotics law and possessed with the intent to distribute 400 grams or more of mixtures containing fentanyl. (See "Plea Allocution Transcript," Dkt. No. 83-1, 8:23-9:10.) Pursuant to 21 U.S.C. § 841(b)(1)(A), the mandatory minimum term of imprisonment for violating that statute is ten years. Now, Gonzalez asserts that he should have been charged under 21 U.S.C. § 841(b)(1)(B), which prohibits possessing with intent to distribute 40 grams or more of mixtures containing fentanyl or 10 grams or more of mixtures containing any analogue of fentanyl. The mandatory minimum term of imprisonment for violating that statute is five years. (See id.)

Gonzalez asserts that he was charged with the incorrect fentanyl weight because a February 4, 2021, New York Police Department Lab Report ("Lab Report") prepared in connection with testing the fentanyl seized in this action states that the "total *analyzed* aggregate weight of fentanyl is 301.84g." (Third Mot., Ex. 2, at 28 (emphasis added); see also Third

5

Mot., at 18.) Gonzalez overlooks, however, that the Lab Report states that the "total aggregate weight of fentanyl . . . is 402.10g," and that "the total weight Narcotics seized for the case is over 400 grams of Fentanyl." (Third Mot., Ex. 2, at 28.) As explained in the Final Presentence Investigation Report, the laboratory tested a random sample from the total seized narcotics. (See "Final PSR," Dkt. No. 143 ¶ 25.[2]) The "analyzed aggregate weight" refers to the random samples that were tested, but the total amount of substances containing fentanyl that were seized weighed over 400 grams. (See id.) Further, in addition to the over 400 grams of fentanyl referenced in the February 4, 2021, Lab Report, law enforcement observed Gonzalez making narcotics transactions in April and May 2021. (See id. ¶¶ 26-30.) On May 20, 2021, law enforcement seized additional narcotics – beyond the more than 400 grams of fentanyl referenced in the February 4, 2021, Lab Report - when they arrested Gonzalez, and those narcotics tested positive for fentanyl. (See id. ¶ 30.) As such, Gonzalez's argument that he should not have been charged with

---

[2] According to the Final PSR, the laboratory tested a random sample of thirty of the 1,000 glassine envelopes that undercover officers purchased from Gonzalez and co-defendant Michael Kelleher ("Kelleher"). Each of the thirty envelopes tested positive for fentanyl, and the laboratory determined that the aggregate weight of the substances in all 1,000 envelopes was approximately 41.807 grams. (See "Final PSR," Dkt. No. 143 ¶ 25.) The Probation Office has clarified that the 41.807 grams refers only to the 1,000 envelopes that were tested in that instance, but that the total seized fentanyl in this action "had an aggregate weight of over 400 grams." (Id.)

6

possessing with the intent to distribute 400 grams or more of mixtures containing fentanyl in violation of 21 U.S.C. § 841(b)(1)(A) is unpersuasive.

Gonzalez raises three additional arguments that the Court previously rejected in prior rulings. First, Gonzalez contends that his guilty plea was involuntary because his former attorney Troy Archie ("Archie") "induced [Gonzalez] into pleading guilty." (Third Mot., at 7.) The Court considered and rejected this argument in denying Gonzalez's First and Second Motions. (See First D&O, at 8-9; Second D&O, at 4.) Moreover, the Third Motion relies solely on the *same* evidence already offered in support of the First and Second Motions – namely, the email correspondence between Archie and Gonzalez's subsequent attorney (Richard Palma) and between Archie and a female acquaintance of Gonzalez's. (Compare Third Mot., Ex. 1, at 22-25, with First Mot., at 21-23, and Second Mot., at 2-5.) Further, Gonzalez does not explain how these emails demonstrate that Archie induced him into pleading guilty. Gonzalez therefore offers nothing more than recycled evidence in support of an argument already rejected by the Court. See Virgin Atl. Airways, Ltd., 956 F.2d at 1255.

Second, Gonzalez contends that he is actually innocent of the charges to which he pleaded guilty because (1) there was insufficient evidence establishing that he was involved

7

in a conspiracy to sell narcotics and, as such, (2) the Government established a buyer-seller relationship only as between Gonzalez and Kelleher. (See Third Mot., at 9-13.) Gonzalez claims that "the evidence shows that [Gonzalez] merely distributed fentanyl to [Kelleher] on approximately 10 separate occasions." (See id. at 10.) The Court rejected these arguments in its First Decision and Order, and Gonzalez offers no new evidence to rebut the Court's prior holding. (See First D&O, at 10; see also First Mot., at 9.) As the Court previously explained, Gonzalez's factual attestations are contradicted by the record evidence, including evidence tying Gonzalez to more than 400 grams of fentanyl and Gonzalez's sworn testimony that he agreed to participate in a drug conspiracy. (See First D&O, at 10-11.)

Third, Gonzalez argues that the evidence in the record prejudicially varied from the Superseding Information, in that the evidence "proves facts materially different from those alleged in the indictment." United States v. Dove, 884 F.3d 138, 149 (2d Cir. 2018). (See Third Mot., at 15.) As the Court ruled in its First Decision and Order, Gonzalez's prejudicial variance argument is without merit because he relies on the same evidentiary arguments rejected above. (See First D&O, at 13.)

Accordingly, even if the Motion were timely, the Court denies Gonzalez's Third Motion to withdraw his guilty plea because Gonzalez offers no controlling new basis for the Court to reconsider its previous decisions and alter the factual findings and legal conclusions of those rulings. See United States v. Jones, 21 Cr. 0059, 2021 WL 4951044, at *2 (S.D.N.Y. Oct. 25, 2021) (denying motion for reconsideration because motion was both untimely and also "point[ed] to no legal reason or controlling decision that would call for reconsideration").

### III.  ORDER

Accordingly, for the reasons stated above, it is hereby **ORDERED** that the motion of defendant Mark Gonzalez ("Gonzalez") for reconsideration of the Court's previous Decision and Order in this action (Dkt. No. 207) is **DENIED**.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 207. The Clerk of Court is also respectfully directed to mail a copy of this Order to Mark Gonzalez, Register Number 46404-509, FCI Fort Dix, P.O. BOX 2000, Joint Base MDL, NJ 08640.

**SO ORDERED.**

Dated:   2 April 2025
         New York, New York

```
                              _____
                                  Victor Marrero
                                     U.S.D.J.
```